WIGGINTON, Chief Judge.
Plaintiffs have appealed a final judgment rendered in a nonjury action which, after trial, found the equities to be with defendants and dismissed the cause at plaintiffs’ cost. The principal contention on appeal is that the trial court abused its discretion and applied to the evidence an incorrect principle of law in concluding that the equities were with defendants and plaintiffs were not entitled to any relief as prayed in their complaint.
Plaintiffs are the owners of a one-acre parcel of land lying in an unincorporated section of Bay County. Defendants, as the Board of County Commissioners of Bay County, constitute the Board of Commissioners of the Mosquito Control District pursuant to the provisions of F.S. Chapter 388, F.S.A. Under this statute defendants are specifically authorized to provide for the construction and maintenance of canals, ditches, drains, and such other works as may be necessary to control mosquito breeding in the district.[1] The Board has all the powers of a body corporate and is authorized to hold, control, and acquire by gift, purchase, or eminent domain for use of the district any real or personal property needed in carrying out its duties under the act.[2]
From the evidence it appears that defendants instituted a project calling for the construction of an open drainage ditch approximately 2500 feet long and emptying into West Bay situated in Bay County. The purpose of the ditch was to drain approximately twelve acres of mosquito breeding area. It was designed to be four to six feet deep, four feet wide at the bottom, and four to six feet wide at the top. The specifications for the project were prepared, submitted to and approved by the proper representatives of the State Board of Health in accordance with the requirements of the statute.
There is some conflict in the evidence as to whether this project was initiated at the request of plaintiffs, or as a result of the independent judgment of the district manager and foreman- employed by defendants. We consider this issue to be immaterial insofar as it affects a proper determination of the cause., ..It is. undisputed that as a result of a conversation between plaintiffs and the foreman employed by defendants, it was agreed that plaintiffs would give their written permission for the drainage ditch to be dug across their property a distance of some 200 feet. It was represented that the ditch would follow generally the course of a natural drain flowing from south to north toward West Bay, and would be of the type normally constructed along state roads and highways with the sides sloped to such a degree as to permit proper flow of water through the ditch. As a result of this conversation defendants prepared and submitted to plaintiffs an informal document which was signed and returned to defendants without the payment of compensation or other consideration. The permit granted by plaintiffs is in the following words and figures, to wit:
“Board of County Commissioners
Bay County Pest Control
P. O. Box 9
Lynn Haven, Florida
“TO WHOM IT MAY CONCERN:
“This letter is your permission to construct and maintain a drainage ditch through my property for the control of mosquitoes and other pest.
“This letter is not an easement and does not give Bay County, or any department of the County, any claim to this property. It is understood that this work is done *671 for the control of mosquitoes and the health of this community.
“Signed /s/ Ray Holley
After securing permission of plaintiffs and other landowners in the area across whose property the ditch was to be constructed, defendants proceeded with the construction of the project in accordance with its plans, specifications and verbal representations. It is undisputed that the purpose to be served by the project was a community purpose to eliminate the breeding grounds of mosquitoes, thereby promoting the health and well-being of those living in the area. The construction of the drainage ditch was completed in a satisfactory and workmanlike manner and was capable of serving its intended purpose.
Subsequent heavy rains caused large quantities of surface water to be discharged into the drainage ditch, as a result of which the sides of the ditch commenced to crumble and erode. Plaintiffs’ land through which the ditch was constructed is of a sandy nature and not sufficiently stable to carry off the water draining through the ditch without the occurrence of erosion. Repeated efforts by plaintiffs to induce defendants to take such action as may be necessary to properly maintain the ditch across their property in such way as to prevent further washing and erosion proved to no avail. The evidence is undisputed that from the time the ditch was dug in early 1964 until the time of the trial of this case in March, 1967, no maintenance work on the ditch had been performed by the county. The evidence reveals that the washing and erosion of the ditch has progressively increased to the point that the ditch is now twenty feet wide at the south end of plaintiffs’ property, thirty feet wide on the north end, and is approximately eight feet deep in some places. The extent of the erosion is such that it now threatens the foundation of plaintiffs’ house and unless stopped will cause the foundation to drop, thereby inflicting substantial damage to the structure.
By their complaint plaintiffs pray that defendants be required to restore plaintiffs’ property to its original condition with the right to construct and maintain a proper drainage ditch of the design originally agreed upon or, in the alternative, to acquire by eminent domain such portion of plaintiffs’ land as may be needed for the drainage structure, paying plaintiffs such just compensation to which they may be entitled. Plaintiffs also pray for an award of damages which they have suffered in attempting to remedy the conditions caused by the washing and erosion of the ditch, and for such other and further relief as may be appropriate under the circumstances.
By their answer, evidence and argument before both the trial court and this court defendants take the position that they constructed the drainage ditch in accordance with the written permission granted to them by plaintiffs and that they thereby incurred no obligations to thereafter maintain the ditch in any particular manner, or to prevent or remedy the condition which has resulted from the erosion and washing of the sides of the ditch to the extent shown by the evidence in this case.
It is our view that the written permit granted by plaintiffs to defendants to construct the drainage ditch over their property was insufficient to constitute a conveyance of or easement through plaintiffs’ land, or to impose on defendants any obligation to construct the drainage ditch contemplated thereby. We are of the further view, however, that once defendants constructed the ditch pursuant to the terms of the permit, it incurred the obligation to maintain it in a proper manner so long as they continued to utilize it as an integral segment of the drainage structure comprising the entire project in that area. Their acceptance of the permit and construction of the ditch pursuant thereto created an executed contract by the terms of which they specifically agreed to maintain the ditch in a proper manner. This obliga *672 tion is recognized by the general law which appears to be as follows:
“Powers and duties with respect to the maintenance and repair of the facilities are ordinarily vested in or charged upon the authorities to whose management the improvement has been committed, who act, under some statutes, upon their own initiative, or upon the petition of interested property owners. Repair is generally regarded as a matter of routine duty, and does not ordinarily call for the complicated proceedings that are required for the establishment of a project in the first instance. As a rule, the functionaries in charge have a considerable discretion in determining whether or not any work is required, and mandamus will not lie to compel them to take action, unless it can be shown that their refusal to do so is purely arbitrary.” [3]
This court, in the case of New Homes of Pensacola, Inc. v. Mayne,[4] recognized the principle that one who agrees to or assumes the duty of constructing a drainage ditch for the benefit of landowners living in the area served by it assumes the continuing duty of repairing and maintaining the drainage structure in such manner as to prevent washing and erosion of the sides of the ditch which might result in damage to the lands of adjacent property owners.
Under the facts shown by the record in this case, when considered in light of the principles above mentioned, equity requires that defendants either (a) repair the ditch so as to restore it to its original dimensions and maintain it in such manner as to prevent erosion and damage to plaintiffs’ adjacent lands; or, (b) close the ditch across plaintiffs’ land and restore the property to the condition it occupied prior to the construction of the ditch by defendants; or, (c) acquire by gift, purchase, or eminent domain such portion of plaintiffs’ land as may be needed for drainage purpose and confine the drainage structure to the land so acquired.
The judgment appealed is reversed and the cause remanded for appropriate proceedings in accordance with the views expressed herein.
Reversed.
CARROLL, DONALD K., and RAWLS, JJ., concur.

. F.S. § 388.161, F.S.A.

. F.S. § 388.191, F.S.A.

. 17A Am.Jur. 478-479, Drains and Sewers, § 53.

. New Homes of Pensacola, Inc. v. Mayne (Fla.App.1964), 169 So.2d 345.